[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Review of the File 
This matter first came to the court by virtue of summons and complaint dated June 29, 1999 and returnable August 10, 1999, in which complaint the petitioner filed a motion for first order of notice indicating that notice most likely to come to the attention of the defendant would be at 5151 Old Post Road in Charleston, Rhode Island. The first order of notice was dated June 30, 1999 and provided for service of process on the defendant by July 29, 1999.
The complaint, dated June 29, 1999, in its prayer for relief requested a dissolution of the marriage, custody of the minor child, both permanent and pendente lite, child support, permanent and pendente lite, an equitable division of property and such other and further relief as the court deems just and proper. A motion for custody pendente lite and child support accompanied the complaint as did the usual automatic declaration of orders. CT Page 734
The return by the sheriff reflected that he had complied with the directives in the order of notice in mailing the requisite papers to the defendant at the Charleston, Rhode Island address.
On August 10, 1999 the defendant filed a pro se appearance.
On September 3, 1999 the plaintiff filed a motion to exempt asking for exemption from participating in the Parenting Education program, which motion was granted by the court, Kenefick, J., on September 27, 1999.
On February 18, 2000 the defendant appeared by counsel.
On May 26, 2000 the defendant filed a motion for compliance, which apparently was not acted upon.
On December 8, 2000 this petition was dismissed for failure of the plaintiff to prosecute by order of the court, Kenefick, J.
On January 5, 2001 the plaintiff and the defendant and their respective principals appeared before the court and the matter was heard to a conclusion.
In the first instance on oral motion by counsel for the plaintiff, the court was requested to restore the matter to the docket in good standing and vacate the prior dismissal by Kenefick, J., and waive any fees attendant thereto. Both counsel joined in this request and it appeared that the earlier dismissal had inadvertently been made. The court granted the restoration.
The court notes that there were no hearings on any motions filed nor orders entered by the court as concerns temporary custody, temporary support or temporary alimony from the return date August 10, 1999 to the present date.
The court makes the following findings of fact. 
The plaintiff, whose maiden name was Joyce L. Green, married the defendant on December 28, 1974 in the town of Ledyard.
The requisite jurisdictional requirement has been met; the plaintiff and the defendant both presently being residents of Connecticut.
The marriage of the parties has broken down irretrievably with no reasonable prospect for reconciliation.
There is one minor child issue of this marriage whose name is Kathryn CT Page 735 Giuliani, born April 21, 1984.
No other minor children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither the plaintiff nor the defendant have been the recipients of welfare from the State of Connecticut or any town, city, municipality or subdivision thereof.
The plaintiff's present residence is 26 Hillcrest Road in Niantic.
There are two children issue of this marital union, James Giuliani, Jr., now age 23, and the aforementioned Kathryn Giuliani; presently age 16.
The parties had earlier been residents of and owners of certain real estate known as 13 Pennywise Road in the town of Ledyard. That property had been purchased in 1983 for $64,000.00 and the parties resided therein for 12 years.
The plaintiff testified that she left the premises because of verbal anger directed to her and the oldest child. This occurred on or about February 16, 1997 and the plaintiff never returned to the Pennywise Road residence.
The plaintiff testified that there are a number of liens upon the Pennywise Road property filed by the Internal Revenue Service. This due to apparently a failure of the defendant to either properly file returns or make the necessary or requisite payments incident thereto when he was involved in the contracting business.
The defendant, according to the plaintiff, had been involved in that calling for a period of 18 years.
The plaintiff testified that there was a pending foreclosure action against the Pennywise Road property and that in addition to the Internal Revenue Service liens there were a variety of other liens or claims including the Hendel Oil Co. and the Town of Ledyard for delinquent taxes extending back over the last four or five years.
The plaintiff was unsure as to the exact standing of the legal title to the Pennywise Road property and indicated that in the event that she had any equity interest therein, she was willing and disposed to set it over to the defendant.
The plaintiff is presently employed as a beverage server at Foxwoods. CT Page 736 She has been there for nine years.
The plaintiff testified she has back problems as the result of a fall which she sustained at work some time ago which resulted in the removal of the L-5 disc in her back. The plaintiff testified that she has a 25% permanent partial disability.
The plaintiff received $32,000.00 in March of 1998 with regard to her claims as to her back injury.
The parties, the plaintiff and the defendant, according to her testimony separated in 1997.
The plaintiff testified that the majority of her recovery for the personal physical injury was spent in furnishing her present residence.
The plaintiff's work schedule each week is limited and sometimes she finds she is not able to put in a full week's work due to physical problems.
The plaintiff treats with a Dr. Maletz in New London on an ongoing basis.
The plaintiff's work requires her carrying a heavy tray and moving about among people at the Foxwoods Casino.
The plaintiff testified that the defendant has physical problems involving what she characterized as cerebral ataxia, that the defendant receives Social Security benefits and that the minor daughter Kathryn is entitled to Social Security benefits which are received by the plaintiff by agreement with the defendant. Apparently the defendant also receives disability benefits.
The defendant worked at Electric Boat for two or three years in the foundry.
The plaintiff presently has health benefits incident to her position at Foxwoods.
As concerns the motor vehicle which the defendant has, the plaintiff assisted in securing that for him.
When the plaintiff left the Pennywise Road residence, the only thing she took with her, according to her testimony were her clothes.
The defendant apparently left the Pennywise Road home in 1999. The monthly mortgage payments on that residence were $460.00 monthly but CT Page 737 apparently were in substantial arrears.
The plaintiff testified that in her opinion the marriage had irretrievably broken down and that in her words "it was over".
The plaintiff made no request for alimony from the defendant.
When the plaintiff left the Pennywise Road property, as indicated, all she took were her clothes and she was content for the defendant to retain the contents of the home as his sole and separate property.
The plaintiff indicated that due to problems pertaining to her back, she may not be able to continue indefinitely in her present position as a beverage server at Foxwoods.
The plaintiff testified that the visits between the minor daughter Kathryn and the defendant are sporadic and that the contacts between the defendant and the minor child are infrequent.
The plaintiff is content to have continued the present pattern of Social Security benefits being sent to her for the benefit of the child Kathryn and asks for no further support from the defendant.
The plaintiff's position with regard to the Internal Revenue claims and liens was to the effect that these resulted from the defendant's actions and lack of responsibility and requested that the court make the defendant solely responsible for any obligation presently outstanding to the Internal Revenue Service.
The plaintiff is desirous of having the tax exemption for the minor daughter Kathryn.
The plaintiff's hourly earnings, according to her testimony, were a basic compensation of $5.40 an hour but with the factor of tips added, taxes are paid on an hourly rate of $14.65. Factoring the two figures together, the plaintiff acknowledged that her hourly rate was approximately $20.00 an hour.
The plaintiff's testimony clarified what was shown on her financial affidavit so that what she presently receives is approximately $400.00 a week.
The plaintiff resides with the minor daughter in Niantic.
The plaintiff has an outstanding loan in the amount of $2,000.00 against the benefits of her 401K plan. CT Page 738
The plaintiff testified that she believed that the liens and claims by the Internal Revenue Service were in excess of $200,000.00. No exhibit was presented to the court in support of that figure.
The plaintiff is age 41, described herself as having chronic pain but basically in her words "healthy". Her education extended through completing high school.
The plaintiff on an earlier occasion, apparently with the assistance of the probate court for the district of Niantic, resumed her maiden name of Green. It appears that this was done in 1998. No document from the probate court was presented to the court by way of an exhibit.
The plaintiff testified that the Internal Revenue Service has indicated to her that the claim that they make is against the defendant only.
The plaintiff testified that to the best of her knowledge and belief the title to the Pennywise Road property was in both names.
No expert witness or appraiser testified before the court as concerns the Pennywise Road property nor was any deed or certificate of title presented establishing the exact nature of the present record title nor any evidence as to value.
The plaintiff reflected a 1983 Toyota motor vehicle on her financial affidavit. In fact, it appears she does not hold title to this vehicle. The title is held in the name of her adult son.
As indicated earlier, the plaintiff made no request of the court as concerns alimony, either periodic or lump sum.
The amount presently being received by the plaintiff from Social Security for the minor child was formerly $81.00 a week. Apparently now it has been increased marginally to $85.00 a week as of January 1, 2001.
The plaintiff made no requests as to personal property and indicated that she would continue to provide medical and dental coverage for the daughter as available through her employment at Foxwoods.
The plaintiff testified during the proceedings that she had actually been unaware of any foreclosure proceedings until appearing in the court this date.
The minor daughter Kathryn is age 16 as earlier indicated. The plaintiff described the daughter's health as good. The child is a junior CT Page 739 in high school at East Lyme.
The plaintiff's request is for sole custody of the daughter and reasonable rights of visitation to the defendant.
The plaintiff testified that there has not been any active ongoing visitation between the defendant and the child since their separation.
While there was no testimony with regard to problems pertaining to alcohol or substance abuse, the plaintiff did testify that there were problems that existed between the defendant and the adult son, which on one occasion resulted in the defendant's arrest as concerns that altercation.
The defendant resides at 300 Brandegee Avenue in Groton. He is age 46.
The defendant indicated that he was in accord with the plaintiff's request that the plaintiff have sole custody of the minor child Kathryn. His request of the court was only to have reasonable rights of visitation and to have the $85.00 Social Security dependent benefits continue during the child's minority being paid to the plaintiff.
In 1976 and 1977 the defendant worked at Electric Boat.
The defendant has chronic bronchitis and since 1981 has received Social Security benefits.
Subsequently he was a painting contractor for three or four years and subsequent to that a shipwright at the Legnos Boatbuilding Company in Groton. He was there for one year. Subsequently the defendant did interior and exterior painting where he would earn annually in the neighborhood of $20-$25,000.00.
In 1992 because of health problems the defendant then subcontracted painting work to others and only did estimating work and his annual income then, he testified, was reduced to in the neighborhood of $15-$20,000.00 a year.
The defendant described his medical situation as one where he was afflicted with cerebella ataxia; that he has been afflicted with this since the 1980's and his balance is affected.
He stopped working in 1996 and applied for Social Security benefits. His disability affects his speech, balance and muscle control. The defendant is not able to walk and move about without a walker. His arms and hands are affected by the affliction and he is required to see a CT Page 740 physician every three months.
The defendant is on medication, Sanoflax, three times a day and Ambramin, once a day. He testified that there is no cure presently in sight for his affliction.
The defendant characterized his condition as one where he is afflicted with celiac disease. His diet is restricted and he is required to eat certain foods only. In that respect, because of specialty foods, his weekly expenses for the food category are somewhat larger than what would ordinarily be the case.
Apparently incident to his work at Electric Boat or other callings, the work resulted in dust being in his lungs and he has a permanent partial disability where he receives a monthly compensation from Social Security.
The amount on an allocated weekly basis is now approximately $170.00. He receives worker's compensation of $107.00 a week. The defendant's other assets are extremely limited.
He has been paying on some credit card debt and has health insurance coverage through the plaintiff's coverage. The defendant intends to apply to the State for medical coverage at such point in time as the court enters a decree of dissolution.
As indicated, the defendant's request was for $50.00 a week in permanent alimony and for one-half of the plaintiff's 401K.
The defendant testified that the Internal Revenue Service has indicated to him that their claim against him is in "a dead file".
The defendant represented under oath that the property has already been foreclosed and that he has had no connection with the same for some time.
The defendant moved out when the house was foreclosed and has been out of the property for the last two years, according to his testimony. He now lives in an assisted living situation.
The defendant has relied solely upon his disability payments and worker's compensation during the pendency of these proceedings and as earlier indicated he made no requests during the pendency of the proceedings, that is from the initiation of the complaint to the present time, for any temporary assistance from the plaintiff. CT Page 741
The defendant's testimony was to the effect that he has not physically seen his daughter Kathryn in the last two years. He represented that the daughter had expressed a disinclination to have contacts with him.
The defendant acknowledged that when he left the Pennywise Road property he took with him that portion of the contents that he was desirable of having.
On the basis of the court's visual observations of the defendant, it appears that his condition is quite poor. He speaks with considerable difficulty and manifestly his speech is impaired. His movements are slow and deliberate in moving from place to place and requires the assistance of a specially designed walker.
From the dissolution of marriage form the court notes this is the first and only marriage for both parties and in each instance their education extended through completing high school only.
From the plaintiff's financial affidavit the court notes that she describes her occupation as that of a beverage server at Foxwoods Resort Casino. She describes her gross weekly income as $252.00, deductions of $60.12 for a net weekly wage of $191.88. The affidavit reflects $81.00 a week received as concerns Social Security benefits for the daughter, and tips in the amount of $100.00 a week. The plaintiff's total net weekly income as shown on the affidavit amounts to $372.88: Weekly expenses are shown as $482.39. No debt is shown on the affidavit. The plaintiff shows an alleged value of the 13 Pennywise Road property in Ledyard at $30,000.00 with a mortgage debt or liens or claims of $250,000.00. It would appear from the testimony that this clearly is erroneous having in mind that the credible testimony of the defendant is to the effect that the property has already been foreclosed. There's a 1983 Toyota automobile valued at $750.00. The title to that vehicle, as earlier noted, is in the name of the plaintiff's son.
The only real asset that the plaintiff has is in a 401K Mashantucket Pequot plan valued at $6,700.00, against which a loan of $2,000.00 has been taken, so that the actual value is $4,700.00.
The defendant's financial affidavit reflects he is disabled, unemployed. His Social Security disability benefit on a weekly basis is $163.00, worker's compensation, $107.00 a week, for a total of $270.00. Weekly expenses, which are modest enough, $315.00; debts, VISA — $300.00, MasterCard — $350.00, IRS — $50,000.00.
The defendant shows no interest in any real estate, a 1988 Jeep Cherokee motor vehicle valued at $2,000.00 free and clear. CT Page 742
It would appear therefore that the sole extent of the defendant's assets are the valuation of the 1988 Jeep at $2,000.00.
From Plaintiff's Exhibit A, the court finds that for 1999 the plaintiff's total of wages, tips and other compensation at her place of employment at Foxwoods "was $11,713.98.
Plaintiff's Exhibit B is a State of Connecticut Judicial Branch case detail as concerns the matter of Anthony Orsini v. James Juliana, et al, docket number CV98-0115808S incident to the foreclosure of the subject premises.
The foreclosure apparently was a foreclosure by sale.
 Discussion 
This is a marriage of 27 years.
There are two children issue of this marriage; one is now an adult and the daughter is age 16 and in high school.
Both of the parties have medical problems. The plaintiff is afflicted with back problems which may impair her ability to continue with the work that she is presently doing as a beverage server at Foxwoods Casino.
The defendant has substantial medical problems for which, according to the testimony, there is no present cure on the horizon and his condition, in the opinion of the court, will undoubtedly continue to deteriorate.
There was no testimony in the proceedings with regard to abuse as to alcohol or substance nor any over physical violence as between the plaintiff and the defendant, only testimony as concerns difficulties between the defendant and the now adult son which involved the authorities.
Apparently the contacts between the defendant and his daughter have been infrequent and the bond is not a close one although there is some indication that the defendant would like to have the climate of that relationship improved.
The financial circumstances of both of the parties are extremely modest. The plaintiff's earnings at Foxwoods are modest and as indicated her future employment may be questionable because of her back problems. CT Page 743
The defendant is living in an assisted living environment although no particulars or data in depth were presented to the court with regard to that particular situation.
As indicated, the plaintiff has made no request for alimony.
The plaintiff has requested that she be entitled to the exemption for the minor child for tax purposes and the plaintiff has indicated that she is content as concerns the present $85.00 a week being received from Social Security incident to the defendant's disability.
The plaintiff and the defendant are apparently in accord that sole custody of the minor child should be accorded to the plaintiff with reasonable rights of visitation to the defendant.
As earlier noted, the plaintiff at a prior point in time has already secured for herself the resumption of her maiden name of Green.
As best the court can devine, there is no real estate owned by either of the parties. It appears from the exhibit presented to the court and the testimony of the defendant that the Pennywise Road property has in fact been foreclosed and that there is no equity interest attaching to either of the parties to this petition.
The future prospects for each of the parties would appear to be quite bleak.
The claims of the defendant presented to the court are for $50.00 a week in periodic alimony from the plaintiff to the defendant and one-half of the amount presently shown on the plaintiff's financial affidavit as her 401K. That sum with the loan pledged against the same would appear to be $4,700.00.
 The Law 
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-62 regarding attorney's fees, C.G.S. § 46b-82
regarding alimony and C.G.S. §§ 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel. CT Page 744
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown no matter how nebulous, the age, health, station and prospective employability, if any, of each of the parties and the practically non-existent estate of the parties and the need of the parties. .
The court has considered the standards of living of the parties.
As concerns the minor child, age 16, the court has considered the child's age, the apparent lack of ties as between the child and the defendant, and the physical and mental health of the child as represented to the court.
The court has considered the outstanding agreement with regard to the Social Security benefits flowing to the plaintiff for the benefit of the minor daughter.
The court has considered the respective financial positions of the plaintiff and the defendant and their prospects or lack thereof for future income and opportunity.
The court has considered the comments of the parties to the effect that the marriage has irretrievably broken down.
The Court enters the following orders. 
Sole custody of the minor child Kathryn Giuliani, born April 21, 1984, shall be with the plaintiff mother, reasonable rights of visitation to the defendant. Support for the minor child shall continue in its present form; to wit, $85.00 a week, the same being the remittance from Social Security to the plaintiff on the defendant's account for the benefit and welfare of the minor daughter.
The court enters no order with regard to any alimony to be awarded to the plaintiff.
The court directs that the defendant shall be solely responsible for the Internal Revenue Service debt although it would appear on the basis of his present circumstances that it is unlikely that any recovery incident to the same would ever be achieved.
The tax exemption for the minor daughter shall be granted and allocated to the plaintiff.
The plaintiff to provide medical and dental coverage for the minor CT Page 745 daughter as available to her through her place of employment.
Each of the parties shall be responsible for the debts shown on their respective financial affidavits, if any.
The court being satisfied that it appears that there is no equity interest remaining in the real estate known as 13 Pennywise Road in the Town of Ledyard, the court enters no order incident thereto.
While admittedly the plaintiff will have the responsibility for the continued care, supervision and maintenance of the minor daughter, and even mindful that her financial circumstances are modest and that the plaintiff as well as the defendant has some health problems, the court grants the defendant the sum of $1.00 a year alimony and in addition thereto the plaintiff shall set over and deliver to the defendant from the remaining portion of the assets of her 401K, the sum of $1,500.00 and the plaintiff may retain the balance of said asset.
The payment of $1.00 a year alimony from the plaintiff to the defendant shall terminate upon the defendant's death, remarriage or cohabitation with an unrelated female. The defendant may retain the 1988 Jeep Cherokee motor vehicle.
The court enters no orders as to attorney's fees.
The court grants the relief prayed for and dissolves the marriage and declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, JTR